Good morning, your honors. May it please the court. Elizabeth Richardson Royer on behalf of the petitioner appellant, Adam Gordy. I plan to try to reserve two minutes for rebuttal. When Adam Gordy was tried for the robberies that resulted in his 63-year sentence, he alternated between heavy sedation and active delusion, depending on whether he was taking his meds. Mr. Gordy's lawyer told the trial judge that Mr. Gordy was over-medicated and could not assist with his defense, that he had a longstanding history of mental illness, including suicide attempts. Mr. Gordy, in fact, tried to cut himself in court in front of the trial judge. But despite mounting evidence of Mr. Gordy's struggles, the trial court refused to hold a second competency hearing, and by doing so violated Mr. Gordy's right to due process. Now, the state court's decision to the contrary is not entitled to deference under the AEDPA. And that's true both because the state court made unreasonable determinations of fact under USC section 2254 D2, and because the state court's decision was an unreasonable application of clearly established Supreme Court precedent. Can I ask you, do you say that the state court made an unreasonable finding of fact in, I guess, crediting the state trial judge's determination that all of this that your client was doing was faking, essentially? Yes, Your Honor, that's the primary. How would we, how in the world would we sitting here looking at this at a cold record be in a position to know whether the state trial judge was wrong? I mean, he, I think at a number of points said, I know nobody's gonna believe me when they read this because this is so outlandish, I've never seen anything like that. I mean, how are we supposed to evaluate that as an unreasonable finding of fact? The flaw was in the fact-finding process in this case, primarily. And so the trial judge's determination that Mr. Gordy was feigning, that no second competency hearing was required, was unreasonable because the trial judge failed to perform the inquiry that was necessary for him to make that determination. Except there was a competency hearing and there were five experts, three of whom declared that he was competent. So what is it about that process that had to be repeated as a matter of due process? I guess that's, let me just finish the question there. I have another question too, but it's kind of separate. Okay, certainly at the time that the initial competency hearing took place, which was months before the trial, three out of five of the experts did find Mr. Gordy competent. Those experts examined him between five and nine months prior to trial. And in Drope v. Missouri, the Supreme Court made clear that the trial judge has to be continually on alert for signs of incompetence. And in Maxwell v. Rowe, this court, despite the fact that four out of five experts in the initial competency evaluation found that the defendant in that case was feigning, this court held that it was unreasonable for the trial court not to hold a second hearing in light of new evidence of incompetence, the way the defendant acted. My second question though is this, with respect to the description by the trial judge that your client was malingering, if you will, there's some evidence that he was coherent at many points and able to communicate effectively with the court. And the timing of his outburst seems rather suspicious, or at least it could have to the trial court. What's wrong with that? Why isn't that supportive of what the trial court found? If there had been no other evidence of incompetence, the trial judge may have been entitled to rely on his observations, but the Supreme Court and this court have both made clear that demeanor cannot dispose of a competency determination. The trial court cannot simply observe the defendant and put aside the other evidence of incompetence. Yes, but the background noise or background music here is that he had been found competent previously. Right. So it isn't just a cold determination without any backdrop. There was an initial competency determination, but in light of the representations made by trial counsel subsequently, regarding Mr. Gordy's longstanding mental health issues and his attempts at suicide in light of Mr. Gordy cutting himself in court and the way that he behaved in court, the trial judge was not permitted under the law to simply observe Mr. Gordy and make his own determination about whether Mr. Gordy's demeanor meant that he was competent. And this court has rejected that type of thing. In Torres v. Prunty, the defendant testified in that case and the trial judge said, look, I looked at this defendant testify and from what I see, he's competent. And this court held that that was unreasonable under 2254 D2 because of new evidence. Yeah, I mean, listen, I think your position would be 100% on the money if we didn't have this finding from the trial court judge that your client wasn't, that this wasn't genuine in terms of the behavior he was exhibiting. Because if you credited all of that as really, being a genuine manifestation of your client's mental state, I mean, obviously at the very least, you'd need to at least have a second hearing. So I'm with you on that. I guess where I get stuck, I know you've addressed this once, but I'm still stuck there is, yes, in Maxwell, you're right. I guess the state trial court judge there too found that the defendant was faking things, but there was kind of more overwhelming evidence pointing toward the direction of incompetence there. And I guess I see less of it here and I'm stuck with this finding by the judge that all of these things that seem pretty telling, this is so transparent. I can just see his whole goal is just to delay things and I'm not going to, I'm just not buying it. And so unless you're gonna say that, no, you can never credit that kind of finding. I'm not sure what to do with that. That kind of finding can't be simply credited where the trial judge failed to perform the necessary inquiry. And the trial judges in Maxwell, Torres v. Punti, Pate v. Robinson, and McMurtry v. Ryan, in all of those cases, the trial court looked at the defendant and said, this defendant is faking. And that was not determinative. And I think here, what's really important to realize is that the trial court's failure to inquire meant that he didn't have the information that he needed. He didn't know that Mr. Gordy, in the year before trial, had tried to kill himself 10 to 18 times according to psychiatric records from the prison. When you say failed to inquire, do you mean failed to hold the second competency hearing? Yes. Or something short of that? Yes, Your Honor. Failed, made determinations without the necessary facts, which is an unreasonable determination of those facts. To be clear, you're saying that if a client exhibits behavior in court, that might suggest they're incompetent. No matter how clearly convinced the trial court judge is that the person is faking it, they can never, ever refuse to hold a second competency hearing because according to you, if they don't do that, they won't have the necessary information to figure out whether, in fact, the person really is faking. I think this case is different than the hypothetical that you're proposing in two ways. First, defense counsel repeatedly insisted that he could not communicate with Mr. Gordy, could not represent him. The second thing is that the trial court recognized that there was a need for more information about the dosages of the antipsychotic and other medications Mr. Gordy was taking. That in and of itself is at least an implicit recognition that there's some doubt. And the trial court said, I'm gonna find out this information. I'm going to make a request of the prison. I'm going to see what medication Mr. Gordy is on. And he failed to do so. And that's the type of failure to inquire. Perhaps if he had done that, that could have been an inquiry short of a hearing that might have permitted him to say, these dosages are nothing to be concerned about. But he didn't do that. And he didn't have access to the psychiatric records that the psychiatrist who examined Mr. Gordy the day that he cut himself in court, and this is not in the record because Mr. Gordy never had a lawyer until before. If it's not in the record, don't tell us because we can't consider it. That I respectfully, Your Honor, Mr. Gordy has raised a claim that the district court abused its discretion by denying him counsel. And so I think the evidence that- But the record is the record at this point. Fair enough. And even on this record, the fact that the trial judge recognized that Mr. Gordy's medication was an issue, the fact that defense counsel said, I can't work with this person. Those are reasons that make this more than just a case where the defendant is acting out in court. And let's- To save some time for rebuttal. Yes, Your Honor. Thank you. You can do that. We'll hear from the state. Thank you. Good morning, Your Honors. Supervising Deputy Attorney General Margaret Maxwell on behalf of Respondent Worden. There was no deficiency in the process here. The trial judge was not required to check his common sense and experience at the door to the courtroom and ignore what he was seeing. Oh, but you've just heard your opponent say that in every one of these cases, the trial judge made a finding that the person was faking and nonetheless, relief was granted. And I guess I certainly remember that from Maxwell and our court nonetheless, under AEDPA on habeas review said that a second, I think it was a second competency hearing was required. So how do you get around that point? Well, here, it wasn't just the trial judge's observations. I mean, the trial judge, right at the very beginning, he is on alert. He notices that there is strange behavior and he's seeing it and quite clearly from this record, he's saying, this is ridiculous. What is going on? But he doesn't just say, well, I'm gonna rely on my own assessment here. He looks in the file and he sees, oh, there's this transfer memo and it describes conduct that I'm seeing. There have been five psychiatrists who have examined this person. Three have found he's malingering in performing behavior that's like I'm seeing. True though, in the other cases, including Maxwell, all of those psychiatrists who first examined the person found that no, this is not legitimate. Well, the difference, one difference between Maxwell in this case is that the Maxwell assessment, the assessment was 12 months before the trial. And here we have the most recent assessment was about four months before the trial. We also have the fact that in Maxwell, the petitioner wasn't even present in the courtroom. So the trial judge wasn't really assessing his day-to-day behavior. And here, the judge sees him, he sees what he's doing. He's saying what, he's walking into the courtroom, he's alert and lucid, and then he just snaps into this sort of half on and off the table sort of position that doesn't even make sense as a common sense thing because you, how are you supporting yourself if you're so unconscious that you don't understand what's going on? And then he, of course, continues to make assessments as the proceedings occur. He notices and states for the record that the petitioner is snapping in and out of it. And he's saying that common sense, if you're getting medication, the medication's not gonna do this to you. This is not how you behave, how you're in and out. He never even figured out what medication the defendant was taking, did he? Well, we have some indication in the record. And the judge did say that he would make some inquiries. He never said he had a doubt. I think that was pretty clearly just to put this all to rest. All of the judges in these cases say they have no doubt because obviously if they expressed a doubt, they'd be required to hold the second competency hearing. So again, I guess I'm not, you're not making a lot of headway, at least with me, in terms of distinguishing these other cases. And I guess I'm struck by counsel's argument that I mean, unless you're gonna have the second competency hearing, how are you as a judge, you're not a trained medical professional, how are you in a position to really determine whether the person's faking it or not? Well, the procedure that California applies, whether the court's the one who assesses the doubt, that's the procedure that's been upheld by the Supreme Court. This is sort of like putting the cart before the horse, that you're sort of doomed to always have a perpetual hearing to assess what the court is seeing. I mean, that would be sort of the logical extension is like, well, despite the prior clear assessments that he is malingering, that are contemporaneous, that describe conduct that is nearly identical to what the court itself is seeing. But you know, I guess what troubles me the most, and what I suppose troubles you the most about this case, is that most people who are just trying to fake incompetence don't smuggle a razor blade into court and slice their wrists or hands, whichever one it is, in front of the jury. That just strikes me as behavior that's well beyond acting out or saying incoherent things. Most people don't do that to themselves, right? And so it seems to me, whatever the prior findings were, four, five, six months ago, once you're the judge and you observe someone do that in court, shouldn't you start to think, well, you know what? Maybe we need to revisit this. That doesn't seem crazy to me at all. Well, the court did say that assessing what it saw, and particularly with the cutting incident, he's like, you know, this circumstance might, in other instances, prompt me to do this thing, and here's why, and he explained why. And one of the things he explained, as I recall, was that the cuts were carefully to the side where they wouldn't actually do damage. Exactly, and that he had taken very precise efforts to conceal these blades so that they wouldn't really do any damage to himself until he got into the courtroom and would be the most disruptive he could possibly be. And so it's not, the court interpreted it not as a effort to, of self-harm, of true self-harm, but an effort to stymie the process when- To do what? I mean, that makes no sense. You think that a defendant who, I guess you think his strategy was just to delay things, that that's gonna get him out of having the trial go forward and what is that gonna do in terms of his, the jury's perception of him? I mean, that makes no sense to me. And I guess I would think, even if you're trying to say this is a guy who was just doing all he could to delay and disrupt things, I mean, unless you've got a screw loose, you're not gonna go in and cut yourself in front of the jury. That just makes no sense to me. Mental illness doesn't equate with a competence, first of all. And also, I can't necessarily pretend to get fully inside his mind, but this is a person who is facing, he's committed a host of crimes. He had wanted a plea bargain early in the process and perhaps he's thinking, the harder I make this process, the more likely someone is gonna cut me a little bit of a break. Well, the timing was somewhat coincidental because it was just when he was getting ready to be identified that this happened. Certainly, that is absolutely true, that the cutting occurred sort of at the moment where someone's about to say, hey, and here he is, now he can't do that. And so, what he actually thought long-term that's going to accomplish, I think... Maybe he thought the jury would find that he didn't have the requisite intent because he was too loopy or who knows? Maybe, and I think he thought that the trial would stop and that he would all start over. There would be months again, but the jury would be dismissed and that he would start over. That's what I think he thought. He was in sort of position where he's in custody, he doesn't have a lot of options, and he is trying to do his best to try to take control of the proceedings. Or perhaps if the trial was delayed, he could get an attorney as opposed to representing himself at that point. Well, he wasn't representing himself at the time, he did have an attorney at that point. What about the opposing counsel's observation that the attorney couldn't communicate with him? Do you agree with that? I don't agree with that at all. And counsel did make representations, which as the court said, I understand you're an advocate, but come on, we all know what's going on here. And some of counsel's representations, he chose his words carefully. He never said, I'm declaring a doubt about his competence, even though he'd participated in the prior competence proceedings. So he knew how to go about doing that if that's what he believed. And quite truthfully, he was having, Mr. Gordy was going to pose a problem for him because this is someone who is not acting in his best interests. And he is doing things that the jury may not take sympathy with or understand. And so when he says, I'm having trouble with him early on, I think that's believable, but I don't think that rises to a level of a doubt that requires a hearing. And then subsequently, we have both these early indications and then we have what develops later, which is counsel later says, petitioner is communicating with me. He's been wonderful. He's engaged. Of course, then that immediately after that, the petitioner engages in an outburst. But if he wanted a new attorney, that could possibly happen if the court thought he wasn't communicating effectively with the one. That's true. The petitioner did make a motion to substitute counsel. Subsequently, argued that personally, which he was very articulate when he was doing that. But his expression of dissatisfaction wasn't anything very particular. Again, all of that seemed to be going toward he really wanted, he just didn't want to be there. Traditionally, even outside of the AEDPA, we rely heavily on trial courts in court assessments in both the federal and the state courts because they're the ones who are there and can see what's going on. And this particular judge, I think as was noted earlier, lamented that there is no one who's reading this record who will have the advantage of having been here in this courtroom and actually to witness this, this is just a total travesty. He said that it was ridiculous, completely bogus, contrived, transparent, laughable. These are all the court's words. How long would it have taken to have a second competency hearing? Suspending, the proceedings would have had to be suspended and usually it takes like 30 days or more, typical process. So, I mean, to suspend it and have the actual hearing that, that's true. So would the same jury have been available? How would that have worked procedurally? Would the jury have remained part of the proceedings and been cautioned not to talk about the case for that 30 period of time? No, they would have had to discharge the jury and start over. So, I mean, assuming that the tests had been met to initiate that process, that formal process. Thank you, counsel. Thank you. I believe you have some rebuttal time remaining. I have only a minute, so I'll try to just make a few points. The first has to do with the timing of the expert reports and counsel said that they were approximately four months before trial and that just isn't true. Four out of the five of them were completed by September, 2007, which is more than seven months before trial. Those experts actually examined him a month or more before that. And so most of these reports are eight or nine months old, which is not that different than the 13 months that was at issue in Maxwell. In addition, the trial court, although he said, I'm relying upon the prior judge's representation, which is apparently echoed by these experts, there's no indication that he actually sat down and read those reports. So to the extent that he relied upon them without reading them, that's again, unreasonable. Why is it unreasonable if he just relied on the finding of competence? Why would that be unreasonable? In light of the new evidence that came up, the self-injury, the outburst in court, defense counsel's representations for the trial judge to not even have read the prior expert reports would be a real failure to inquire, and that's not a fact-finding process that's entitled to deference. The other thing that I wanted to, I see that I'm out of time, so I will just sit down. Thank you. I think we understand your position well. We appreciate the arguments of both counsel. They've been very, very helpful. And the case just started is submitted.
judges: Graber, Rawlinson, Watford